# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ALAN SHORTER,

Plaintiff,

     v.                                 5:12-CV-1502
(NAM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

KIMBERLY A. SLIMBAUGH, ESQ., for Plaintiff
BENIL ABRAHAM, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Senior United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On June 19, 2009, plaintiff protectively filed[1] his application for disability insurance benefits, claiming disability beginning April 26, 2008. Plaintiff's application was denied initially on October 1, 2009 (Administrative Transcript ("Tr.") 81-89), and he requested a hearing before an ALJ (Tr. 90). The video hearing, at

---

[1] When used in conjunction with an application for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. See 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

which plaintiff testified, was conducted on January 18, 2011. (Tr. 55).

In a decision dated January 21, 2011, the ALJ found that plaintiff was not disabled. (Tr. 30-38). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 16, 2012. (Tr. 1-5).

## II.   **FACTS**

Plaintiff claims to be disabled as of April 26, 2008, based primarily on an injury to his back sustained while at work. Following this injury, plaintiff claims to have experienced pain with prolonged sitting, standing, and bending. (*See, e.g.,* Tr. 652-56). An MRI on July 18, 2008 showed anular bulges at T12-L1, L2-3 and L4-5 without central canal stenosis and asymmetric protrusions of the anulus into the foramina on the left at L2-3 and the right at L3-4. (Tr. 738-39). When more conservative treatment did not alleviate his symptoms, plaintiff underwent a lumbar laminectomy on March 17, 2009. (Tr. 715-16). An MRI on July 21, 2009 showed the laminectomy/decompression, degenerative disc disease, a minimal posterior median disc bulge at L4-5, and left neural foraminal narrowing. (Tr. 774). Plaintiff also had carpal tunnel release surgeries on October 10, 2008 and January 30, 2009. (Tr. 807, 805). At the time of the hearing, plaintiff was 5'9" tall and weighed approximately 225 pounds. (Tr. 35). Plaintiff's counsel has included a detailed summary of the medical and vocational facts in her brief. (Pl. Br. at 1-12). Defendant has incorporated the ALJ's summary into its brief. (Def. Br. at 1). This court will also incorporate the facts as stated by the ALJ and both counsel, with any exceptions as noted in the discussion below.

## III.  ALJ's DECISION

The ALJ found that plaintiff met the insured status requirements through December 31, 2013, and that plaintiff had not engaged in substantial gainful activity since April 26, 2008, his alleged onset date.  (Tr. 32).  The ALJ then found that plaintiff had a "severe combination of impairments:" lumbar degenerative disc disease, carpal tunnel syndrome, and obesity. (*Id.*).  The ALJ concluded, however, that plaintiff's impairments did not meet the severity of the listed impairments.[2] (*Id.*).

The ALJ determined that plaintiff had the RFC to perform sedentary work with additional limitations.  (Tr. 33).  He was found to be limited to work that permits him to sit or stand alternatively, but would not have to leave the workstation.  He would require the use of a cane to ambulate over uneven ground, and he must avoid concentrated exposure to moving machinery, unprotected heights, vibrations, extreme heat, and extreme cold.  He also must avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, poorly ventilated areas.  (*Id.*).

After reviewing the record, the ALJ gave the opinion of Dr. Richard Zogby, M.D., plaintiff's treating orthopedic surgeon, only "some weight."  The ALJ found that the restrictive RFC described by Dr. Zogby, limiting plaintiff to less than sedentary work with additional non-exertional limitations, was not supported by the record, and was inconsistent with plaintiff's reported daily activities.  (*Id.*).  The ALJ observed that notes in the record showed that plaintiff was able to "get on and off the

---

[2] The ALJ explicitly considered section 1.04 (disorders of the spine).  20 C.F.R. Pt. 404, Subpt. P, App. 1.

exam table without help and was able to dress and undress without help,"[3] that he walked without a cane, and only used it when the pain returned. (*Id.*). The ALJ further observed that Dr. Zogby's records showed that plaintiff's symptoms were relieved with rest, medication, and changing positions, and that while he continued to have symptoms, they improved with physical therapy and medications. (*Id.*).

The ALJ also gave only "some weight" to consultative examiner Dr. Sandra Boehlert, M.D., who opined that plaintiff has moderate to marked limitation in his ability to walk and perform heavy exertion while standing. Though the ALJ agreed with Dr. Boehlert's broad limitations, he found that the more specific RFC set forth in his decision was supported by the evidence. (Tr. 35). Similarly, the ALJ found that state agency medical consultant M. Corwin's opinion[4] was only entitled to "some weight" as the evidence at the hearing persuaded the ALJ that plaintiff had more non-exertional limitations than opined by the state agency consultant. (Tr. 36).

Dr. Daniel Carr, M.D., evaluated plaintiff in relation to his workers' compensation claim. (Tr. 36). The ALJ found that Dr. Carr's opinion that plaintiff could return to work in a job that avoided heights, allowed frequent positional changes with no repetitive bending at the waist and a 15-pound lifting restriction was entitled to "significant weight," as it was consistent with the other medical evidence and with plaintiff's testimony. (*Id.*).

---

[3] The ALJ refers to this as plaintiff's "treating source," however, it appears that he was referring to an exam conducted by Daniel Carr. (Tr. 34) (referring to Ex. 8F at 6 (Tr. at 472)).

[4] Both the ALJ and defendants (Tr. 36; Def. Br. at 15) state that Corwin determined that plaintiff could perform light work; however, in the narrative, Corwin found that plaintiff "retains the ability to complete sedentary work with frequent positional changes." (Tr. 264).

In making the RFC determination, the ALJ considered plaintiff's carpal tunnel syndrome, knee problems, and obesity. (Tr. 34-35). The ALJ also considered plaintiff's testimony regarding his symptoms, finding that his impairments could cause such symptoms. However, based in part on plaintiff's daily activities, the ALJ found that the reported intensity, persistence and limiting effects were not credible to the extent they were inconsistent with the ALJ's RFC determination. (Tr. 35).

The ALJ concluded that plaintiff could not return to his former work, but that he retained the RFC for sedentary work with additional non-exertional limitations. (Tr. 33, 36). The ALJ then used the Medical Vocational Guidelines and the testimony of a vocational expert to determine, based on plaintiff's age, education and prior work experience, that plaintiff was not disabled. (Tr. 37-38). The vocational expert testified that while a sit/stand option is not contemplated by the dictionary of occupational titles, based on his experience, such a limitation would not preclude employment in any of the identified occupations. (Tr. 37).

## IV. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual

functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## V.     <u>ISSUES IN CONTENTION</u>

The plaintiff makes the following claims:

(1)     The ALJ failed to properly combine the effects of all plaintiff's impairments.  (Pl. Br. at 13-15) (Dkt. No. 10).

(2)     The ALJ failed to properly assess plaintiff's credibility.  (Pl. Br. at 15-18).

(3)     The ALJ failed to give proper weight to the treating physician's opinion. (Pl. Br. at 18-19).

(4)     The ALJ failed to properly consider the evidence in determining plaintiff's residual functional capacity ("RFC"). (Pl. Br. at 19-21).

Defendant argues that the Commissioner's decision is supported by substantial evidence and must be affirmed.  (Dkt. No. 12).  For the following reasons, this court agrees with the defendant and will recommend dismissal of the complaint.

## VI.     RFC/TREATING PHYSICIAN/CREDIBILITY

The court concludes, for the reasons set forth below, that the ALJ properly evaluated the opinions of the treating physician and the credibility of plaintiff's statements about his symptoms and limitations.  The court also finds that the ALJ appropriately considered all of plaintiff's impairments and that substantial evidence supports the ALJ's RFC determination.  Accordingly, it is recommended that the decision of the Commissioner be affirmed and plaintiff's complaint dismissed.

### A.     Legal Standards

#### 1.     RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp.

2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). The ALJ must evaluate the combined effect of plaintiff's impairments on his/her ability to work, "regardless of whether every impairment is severe." *Id.*

Although the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)) (*Report-Recommendation*), *adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, at *3 (N.D.N.Y. Aug. 2, 2005)). In addition to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an

examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7. "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*).

When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20

C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the

credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

## B. Application

### 1. Treating Physician

The ALJ found that plaintiff could perform sedentary work with additional limitations, including that plaintiff would need to sit/stand alternatively and use a cane over uneven ground. The ALJ gave only "some weight" to Dr. Zogby's RFC, which limited plaintiff to less than sedentary work. Plaintiff argues that the ALJ erred in the weight he gave Dr. Zogby's assessment. (Pl. Br. at 18-21). However, this court concludes that there is substantial evidence in the record that is inconsistent with Dr. Zogby's restrictive RFC.

Dr. Zogby's RFC assessment is set forth in a questionnaire, dated June 7, 2010, in which Dr. Zogby checks various boxes and circles various numbers indicating the plaintiff's restrictions. (Tr. 755-61). This functional assessment imposes very strict limitations on plaintiff, including an inability to sit for more than 30 minutes at one time, stand or walk for more than 15 minutes at one time, and an inability to sit for more than 2 hours in an eight-hour work day, or stand or walk for more than 30

minutes in an eight-hour work day. (Tr. 755-61). Dr. Zogby further opined that plaintiff is limited to lifting and carrying up to 10 pounds occasionally, could operate foot controls occasionally, could climb stairs and ramps occasionally, but never climb ladders, balance, stoop, kneel, crouch, or crawl. The RFC finding of the ALJ is in fact consistent with Dr. Zogby's opinions in some respects.[5] The most significant inconsistency is in the alleged ability of plaintiff to sit for only about two hours in an eight-hour workday.

Dr. Zogby's functional assessment does not provide an explanation for the limitation on plaintiff's ability to sit for greater than two hours, and the limitations as expressed in the functional assessment are more limiting than any restrictions discussed in his office records and do not coincide with his contemporaneous findings. The record includes treatment notes from Dr. Zogby for treatment over the course of approximately two years–from December 2008 until December 2010. Dr. Zogby began treating plaintiff when plaintiff was referred for a surgical consultation. (Tr. 567-70). Dr. Zogby performed a lumbar laminectomy on March 17, 2009. (Tr. 699).

Following the surgery, Dr. Zogby's notes consistently observe that plaintiff experiences mild to moderate pain mostly in the lumbar spine area that radiates to both legs and feet, occurring mostly with periods of activity; he reports negative straight leg raise tests,[6] normal station, mostly normal gait, and the use of a cane during some

---

[5] For example, the ALJ found that plaintiff is limited to sedentary work and, in addition to the sit/stand option and other non-exertional limitations, found that plaintiff can "occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, bend, and crawl." (Tr. 33).

[6] "The Straight Leg Raising (SLR) test has been used as the primary test to diagnosis lumbar disc herniations . . . ." Majlesi J, Togay H, Unalan H, Toprak S., *The sensitivity and*

visits. (Tr. 246-48, 243-45, 240-42, 236-38, 317-19, 311-14, 303-05, 294-97, 288-90, 762-64, 800-03, 794-97, 789-91). Generally, the contemporaneous treatment notes discuss subjective complaints, but mention very few clinical or examination findings to support those subjective complaints. For example, only a month before completing this medical source assessment, Dr. Zogby reports that plaintiff's condition is stable and only a conservative course of treatment is being administered. (Tr. 763-64). Two months after completing the assessment, Dr. Zogby opined that plaintiff would benefit from continuation of his exercise and strengthening program through a wellness/gym membership. (Tr. 802). Dr. Zogby further observed that though plaintiff's symptoms persist, he has made good progress, and therapy and medication provide relief. (*See* Tr. 795, 790). Moreover, at various times during the treatment relationship, plaintiff actually reported an improvement in symptoms. (*See, e.g.,* Tr. 244, 312, 289, 766, 790).

In determining that Dr. Zogby's opinion was inconsistent with the evidence in the record, the ALJ reviewed the opinions issued by Dr. Carr, Dr. Boehlert and state agency analyst Corwin. All three support the RFC assessment made by the ALJ. The RFC finding draws a great deal of support from Dr. Carr who examined plaintiff on three occasions.[7] Based on his July 24, 2009 exam, Dr. Carr concluded that plaintiff had a moderate to marked partial disability under the Worker's Compensation

---

*specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation.* http://www.ncbi.nlm.nih.gov/pubmed/18391677 (last visited October 24, 2013).

[7] Though plaintiff contends that Dr. Carr only examined plaintiff once (Pl. Br. at 19, 20), the record includes notes of three visits–on July 7, 2008, October 23, 2008 and July 24, 2009. (Tr. 652-56, 596-99, 249-52).

guidelines and that he had the ability to return to work in a job that allows frequent positional changes, does not require repetitive bending at the waist or working at heights, and limits plaintiff to a 15 pound lifting restriction. (Tr. 249-52). Dr. Carr's conclusion is supported by his examination of plaintiff during which plaintiff stated that his symptoms improve with rest, pain medication and frequent positional changes. (*Id.*). Plaintiff was able to dress and undress and get on and off the examination table on his own. (*Id.*). Plaintiff was unable to estimate the amount of time he was able to sit or stand, instead simply stating that he has to constantly move. (*Id.*). These limitations were clearly considered by Dr. Carr when he determined that plaintiff would need to work in a job that allowed "frequent positional changes." (*Id.*).

The consultative report of Dr. Sandra Boehlert also supports the ALJ's conclusion. Dr. Boehlert examined plaintiff on August 17, 2009. (Tr. 375-78). During this examination, Dr. Boehlert observed that plaintiff did not need help on and off the exam table and that he was able to rise from a seated position without difficulty. (*Id.*). She further observed that he appeared "in no acute distress" with normal gait, was able to heel and toe stand without difficulty. (*Id.*). Dr. Boehlert concluded that plaintiff's prognosis was fair, and that he had a moderate to marked limitation to ambulation or heavy exertion in the standing position. (*Id.*). The ALJ concluded that although Dr. Boehlert's conclusions were generally supported, the additional limitations in the ALJ's RFC determination were supported by the record.

The record also contains an RFC Assessment form completed by M. Corwin on September 29, 2009. Corwin appears to be a state disability analyst. (*See* Tr. 279, 374). However, the RFC Assessment form is signed as a "Medical Consultant," (Tr.

266), therefore the ALJ considered it to be an opinion from a "state agency medical consultant." (Tr. 36). Plaintiff argues that the ALJ erred and should not have considered the assessment because it was not from an acceptable medical source. (Pl. Br. at 19). The ALJ stated that Corwin found that plaintiff was capable of work at the light exertion range, but the ALJ held that based on the "evidence received at the hearing level," plaintiff had more non-exertional limitations than opined by Corwin. In light of the other substantial evidence in the record supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than Corwin's assessment, any error in considering this report was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010) (finding that remand is unnecessary, notwithstanding a legal error, where the application of correct legal pricniples to the record could lead only to the same conclusion).

Additionally, the ALJ's RFC determination is supported by other evidence in the record. For example, Dr. Scott Gingold examined plaintiff on May 28, 2008 and August 11, 2008, prior to plaintiff's lumbar laminectomy. (Tr. 436-39, 433-34). Dr. Gingold opined that the MRI scan findings did not correlate with plaintiff's subjective complaints, and that although the MRI demonstrates degenerative disc disease, there were no large disc herniations and it was "essentially normal for his age." (Tr. 434, 438).

Finally, plaintiff's reported daily activities further support the ALJ's RFC determination. Plaintiff reports going to physical therapy, going to doctors appointments, exercising, stretching three times per day, reading books, watching television and visiting friends. (Tr. 186). He further stated that he is able to prepare

simple meals. (Tr. 187). Plaintiff goes outside every day, can walk and drive a car, and is able to shop for food, clothes, and hygiene products. (Tr. 188, 189). Plaintiff visits friends one or two times per week, and goes to church one time per week. (Tr. 190). During the hearing, plaintiff testified that he was able to drive himself to the hearing, and the 10-12 mile drive was "not bad[,] [i]t's comfortable." (Tr. 62). When asked about his ability to sit for 30 minutes at a time and stand for 15 minutes at a time, plaintiff agreed "[t]hat's roughly right[,] . . . It's like I just need to reposition." (Tr. 63). Plaintiff further testified that when he has looked for employment, he has not been selected because he cannot stand for "four hours straight without a break." (Tr. 65). These reported activities are consistent with the analyses of Drs. Carr, Boehlert, and the state agency consultant.

The ALJ undertook a thorough assessment of the evidence of record, and it is evident from the ALJ's citation to Dr. Zogby's treatment notes that the nature and duration of his treatment relationship with plaintiff were properly considered. Further, it is important to note that the ALJ did not discount the opinion of Dr. Zogby wholesale, instead, adopting many of the limitations that he prescribed. The court concludes that there is substantial evidence that is inconsistent with the assessment of Dr. Zogby that plaintiff is limited to sitting for 2 hours per day and supports the ALJ's rejection of those limitations that are inconsistent with his RFC determination. Therefore, the ALJ's partial rejection of the treating physician's restrictive RFC was supported by substantial evidence.

### 2. Credibility

Plaintiff next argues that the ALJ failed to properly assess plaintiff's credibility.

(Pl. Br. at 15-18). The ALJ, applying the appropriate two-step credibility standard, concluded that plaintiff's impairments could reasonably be expected to cause the symptoms he alleged; but, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effect of these symptoms were not credible to the extent they were inconsistent with his RFC determination. (Tr. 33-35). The ALJ also discussed plaintiff's testimony and concluded that plaintiff

> demonstrated he is able to attend to his own personal hygiene and grooming. He described his typical day to include attending physical therapy and doctors' appointments, exercising/stretching, reading, watching television, and visiting friends. The claimant can prepare some meals and feeds himself. The claimant goes out daily and travels by walking or driving. He is able to shop for food, clothes, and personal items in stores. The claimant acknowledged being able to manage finances. His social activities include interacting with friends, attending church, and attending birthday parties.

(Tr. 35) (internal citations omitted). The ALJ also cited to plaintiff's testimony related to his subjective complaints of pain and other symptoms. (Tr. 33). The ALJ appears to have credited much of plaintiff's testimony about the extent of his limitations, including those related to the need to change positions frequently, and the use of a cane and incorporated corresponding restrictions into his RFC finding. (Tr. 33) (observing that plaintiff stated "he needs to change positions and uses a cane when he leaves the house to help ambulate and balance").

The court finds that the ALJ correctly applied the proper legal standards in assessing plaintiff's credibility and adequately specified the reasons for discrediting plaintiff's statements. His credibility determination is supported by substantial evidence.

### 3.    RFC Determination

The ALJ found, "after careful consideration of the entire record," that the plaintiff

> . . . has the residual functional capacity to perform sedentary work . . . except the claimant is limited to work that permits the claimant to sit or stand alternatively, but would not have to leave the workstation. The claimant can only frequently push or pull with his bilateral upper extremities; frequently operate foot controls with his bilateral lower extremities; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, bend, and crawl; frequently reach with his bilateral upper extremities. The claimant must avoid concentrated exposure to moving machinery and unprotected heights; vibrations; extreme heat; extreme cold; and avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, poorly ventilated areas, etc. Additionally, the claimant requires use of a cane to ambulate over uneven ground.

(Tr. 33). The ALJ's RFC finding incorporated significant limitations on the full range of sedentary work based on plaintiff's low back pain and inability to sit or stand for prolonged periods of time without changing positions.

According to the applicable regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a). The court finds that the ALJ considered, with appropriate specificity, plaintiff's ability to perform the various functions associated with sedentary work–sitting, limited lifting, and occasional walking and

standing. (T. 33).[8] The ALJ's conclusion that plaintiff could perform sedentary work, with additional limitations–that he had to sit or stand alternatively without leaving the workstation, and using a cane over uneven ground–is supported by substantial evidence in the record (as described above).

As noted above, the ALJ is required to consider both severe and non-severe impairments in conducting his RFC analysis. Plaintiff contends that the ALJ failed to discuss several purported impairments in his RFC review–plaintiff's obesity, pain, and carpal tunnel. (Pl. Br. at 13-15). As discussed above, the ALJ considered plaintiff's subjective complaints of pain. Likewise, the ALJ considered the effects of plaintiff's obesity and carpal tunnel, which, the court notes the ALJ actually found to be severe impairments at Step 2. (Tr. 32).

Plaintiff argues that, based on Social Security Ruling ("SSR") 02p-01, the ALJ erred by failing to consider the cumulative effects of obesity on plaintiff's condition. (Pl. Br. at 14). This court does not agree. The ALJ explicitly found that obesity was one of plaintiff's severe impairments. (Tr. 32). Furthermore, the court concludes that the ALJ did adequately consider plaintiff's obesity in making his RFC determination. In addition to finding that it constituted a severe impairment, the ALJ specifically stated that "alone or in combination with the claimant's other impairments, it more than minimally limits his ability to do basic work activities. The undersigned's

---

[8] The court concludes that the ALJ appropriately considered the various functions involved in sedentary work; however, even assuming that he had not, the Second Circuit has held that failure to perform a function by function analysis is not a per se error requiring remand where the ALJ's analysis affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

assessment of the claimant's residual functional capacity below takes this condition into account." (Tr. 35). The ALJ's decision shows that the plaintiff's obesity was considered in conjunction with all of plaintiff's other severe impairments. *See Miller v. Astrue*, No. 11-CV-4103, 2013 WL 789232, at \*10-11 (E.D.N.Y. March 1, 2013) (finding that the ALJ properly considered the plaintiff's obesity) (citing *Talavera v. Comm'r of Soc. Sec.*, No. 06-CV-3850, 2011 WL 3472801, at \*12 (E.D.N.Y. Aug. 9, 2011)). Moreover, none of the medical opinions in the record describe any effects that obesity has on plaintiff's daily functioning. The physicians who examined plaintiff were all aware of his obesity and would have factored this condition into their opinions regarding his capabilities. Thus, the ALJ did not fail to properly "consider" plaintiff's obesity. *See, e.g., Paulino v. Astrue*, 08 Civ. 02813, 2010 WL 3001752, at \*18-19 (S.D.N.Y. July 30, 2010) (the ALJ satisfactorily considered the effects of plaintiff's obesity by relying on evaluations by doctors who accounted for the claimant's obesity) (collecting cases); *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (the ALJ implicitly factored plaintiff's obesity into his RFC determination by relying on medical reports that repeatedly noted plaintiff's obesity and provided an overall assessment of her work-related limitations).

Similarly, the court concludes that the ALJ adequately considered his carpal tunnel syndrome in the RFC determination. The record demonstrates that plaintiff had carpal tunnel release surgeries on October 10, 2008 and January 30, 2009. (Tr. 807, 805). During the hearing, the ALJ questioned plaintiff regarding his carpal tunnel syndrome and any remaining issues with the use of his hands. Plaintiff testified that he felt the carpal tunnel release surgeries went well and that the problems are "nothing

like they were." (Tr. 65-67). Plaintiff was not sure if he has limitations with respect to using his hands and handling, and, when asked if he is still having problems, stated that "they just feel swollen . . . [and] every once in a while they'll start tingling." (Tr. 65-67). Additionally, plaintiff told consultative examiner Dr. Boehlert that the carpal tunnel was better following the surgeries and that he experiences rare occasional hand numbness at night but does not need braces. (Tr. 375-78). The ALJ addressed the remaining symptoms in his decision. There is, therefore, substantial evidence in the record to support the conclusion that plaintiff's carpal tunnel syndrome had improved following surgery.

Thus, the ALJ properly considered all of plaintiff's relevant limitations in the RFC determination, and his decision is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 20, 2013

Andrew T. Baxter
U.S. Magistrate Judge